**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| M S INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> IRONSHORE SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No. _____ <br><br> **COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff M S International, Inc. ("MSI" or "Plaintiff"), by and through its undersigned counsel McGuireWoods LLP, files this Complaint against Defendant Ironshore Specialty Insurance Company ("Ironshore" or "Defendant") (collectively the "Parties").

**INTRODUCTION**

1. This is a lawsuit by MSI to collect promised insurance coverage under primary commercial general liability insurance policies issued by Ironshore. MSI has been named a defendant in nearly 130 underlying lawsuits alleging bodily injuries purportedly resulting from exposure to harmful substances in MSI's products (each an "Underlying Lawsuit" and, collectively, the "Underlying Lawsuits"). Almost all of these Underlying Lawsuits are pending in California, where MSI is based.

2. Each of the Underlying Lawsuits triggers Ironshore's broad duties under a series of commercial general liability insurance policies Ironshore issued to MSI starting in 2013 and continuing through the present (each a "Policy," and collectively the "Policies"). However, contrary to the terms of the Policies and the law, Ironshore has wrongfully failed to honor or refused to acknowledge the full extent of its duties. In failing and refusing to honor and acknowledge its obligations, Ironshore is consciously depriving MSI of the financial security and

the benefits of the Policies, breaching the Policies, and acting in bad faith. As a result of Ironshore's breaches, anticipatory breaches, and bad faith, MSI has been, and will continue to be, damaged and has been forced to bring this lawsuit to obtain the benefits owed to it under the Policies.

3. Through this lawsuit, MSI seeks declaratory relief to confirm its right to insurance coverage under the Policies issued by Ironshore and to confirm Ironshore's obligations in connection with the Underlying Lawsuits. MSI also seeks to recover damages it has suffered, and continues to suffer, as a result of the breaches and bad faith conduct of Ironshore.

## PARTIES

4. MSI is a corporation duly organized and existing under the laws of the State of Indiana, with a principal place of business in Orange, California. MSI is one of North America's leading distributors of flooring, countertop, wall tile, and hardscaping products. MSI distributes a wide variety of products, including over 5,000 Stock Keeping Units (or SKUs) of luxury vinyl tile, porcelain and ceramic tile, quartz countertops, natural stone countertops and tile (granite, marble, travertine, slate, limestone, quartzite, and sandstone), prefabricated countertops, decorative mosaics, and sinks. MSI operates more than 50 showrooms and distribution centers across the United States and Canada.

5. Upon information and belief, Ironshore is a corporation organized and existing under the laws of the State of Arizona, with a principal place of business in Boston, Massachusetts.

## JURISDICTION & VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between corporations of different states.

7.  Jurisdiction and venue in this Court are proper because the Parties consented to the jurisdiction of the state of New York in the Policies' "Choice of Forum" clause, which states:

> In the event that [MSI] and [Ironshore] have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, [MSI] agrees with [Ironshore] that any such litigation shall take place in the appropriate federal or state courts located in New York, New York . . . .

## THE POLICIES

8.  MSI is insured under the Policies, each of which is described in greater detail in the below paragraphs.

9.  For the January 1, 2013, to January 1, 2014, policy period, Ironshore issued Policy number 001561300 to MSI (the "2013-14 Policy"). Subject to a $50,000 deductible per "Occurrence" and a $1,000,000 "Each Occurrence Limit," the 2013-14 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2013-14 Policy is attached hereto as Exhibit A and incorporated herein by reference.

10. For the January 1, 2014, to January 1, 2015, policy period, Ironshore issued Policy number 001561301 to MSI (the "2014-15 Policy"). Subject to a $50,000 deductible per "Occurrence" and a $1,000,000 "Each Occurrence Limit," the 2014-15 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2014-15 Policy is attached hereto as Exhibit B and incorporated herein by reference.

11. For the January 1, 2015, to January 1, 2016, policy period, Ironshore issued Policy number 001561302 to MSI (the "2015-16 Policy"). Subject to a $50,000 deductible per "Occurrence" and a $1,000,000 "Each Occurrence Limit," the 2015-16 Policy provides a

$2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2015-16 Policy is attached hereto as Exhibit C and incorporated herein by reference.

12. For the January 1, 2016, to January 1, 2017, policy period, Ironshore issued Policy number 001561303 to MSI (the "2016-17 Policy"). Subject to a $50,000 deductible per "Occurrence" and a $1,000,000 "Each Occurrence Limit," the 2016-17 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2016-17 Policy is attached hereto as Exhibit D and incorporated herein by reference.

13. For the January 1, 2017, to January 1, 2018, policy period, Ironshore issued Policy number 001561304 to MSI (the "2017-18 Policy"). Subject to a $50,000 deductible per "Occurrence" and a $1,000,000 "Each Occurrence Limit," the 2017-18 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2017-18 Policy is attached hereto as Exhibit E and incorporated herein by reference.

14. For the January 1, 2018, to January 1, 2019, policy period, Ironshore issued Policy number 001561305 to MSI (the "2018-19 Policy"). Subject to a $1,000,000 "Each Occurrence Limit," the 2018-19 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2018-19 Policy is attached hereto as Exhibit F and incorporated herein by reference.

15. For the January 1, 2019, to January 1, 2020, policy period, Ironshore issued Policy number 001561306 to MSI (the "2019-20 Policy"). Subject to a $1,000,000 "Each Occurrence Limit," the 2019-20 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2019-20 Policy is attached hereto as Exhibit G and incorporated herein by reference.

16. For the January 1, 2020, to January 1, 2021, policy period, Ironshore issued Policy number 001561307 to MSI (the "2020-21 Policy"). Subject to a $1,000,000 "Each Occurrence Limit," the 2020-21 Policy provides a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2020-21 Policy is attached hereto as Exhibit H and incorporated herein by reference.

17. For the January 1, 2021, to January 1, 2022, policy period, Ironshore issued Policy number IEPICB5GNE001 to MSI (the "2021-22 Policy"). The 2021-22 Policy provides a $2,000,000 Each Occurrence Limit subject to a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2021-22 Policy is attached hereto as Exhibit I and incorporated herein by reference.

18. For the January 1, 2022, to January 1, 2023, policy period, Ironshore issued Policy number IEPICB5GNE002 to MSI (the "2022-23 Policy"). The 2022-23 Policy provides a $2,000,000 Each Occurrence Limit subject to a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2022-23 Policy is attached hereto as Exhibit J and incorporated herein by reference.

19. For the January 1, 2023, to January 1, 2024, policy period, Ironshore issued Policy number IEPICB5GNE003 to MSI (the "2023-24 Policy"). The 2023-24 Policy provides a $2,000,000 Each Occurrence Limit subject to a $2,000,000 General Aggregate Limit of coverage. A true and correct copy of the 2023-24 Policy is attached hereto as Exhibit K and incorporated herein by reference.

20. For the January 1, 2024, to January 1, 2025, policy period, Ironshore issued Policy number IEPICB5GNE004 to MSI (the "2024-25 Policy"). Subject to a $100,000 deductible per "Occurrence" and a $2,000,000 General Aggregate Limit, the 2024-25 Policy provides an Each

Occurrence Limit of $2,000,000 of coverage. A true and correct copy of the 2024-25 Policy is attached hereto as Exhibit L and incorporated herein by reference.

21. For the January 1, 2025, to January 1, 2026, policy period, Ironshore issued Policy number IEPUW0031676300 to MSI (the "2025-26 Policy"). Subject to a $100,000 deductible per "Occurrence" and a $2,000,000 General Aggregate Limit, the 2025-26 Policy provides a $2,000,000 Each Occurrence Limit of coverage. A true and correct copy of the 2025-26 Policy is attached hereto as Exhibit M and incorporated herein by reference.

22. The Policies each obligate Ironshore to "pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury** [if t]he **bodily injury** . . . is caused by an **occurrence** [and] takes place during the **policy period**." The Policies further state that Ironshore has "the right and duty to defend" MSI against any lawsuit seeking such damages.

23. The Policies define "bodily injury" to mean "physical injury, sickness, disease, building-related illness, mental anguish, shock or emotional distress, sustained by any person, including death resulting therefrom." The Policies further provide that "bodily injury" includes "medical monitoring costs."

24. The Policies each define an "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25. The Policies further state: "The following applies to progressive or indivisible **bodily injury** . . ., including any continuation, change or resumption of such **bodily injury** . . ., which takes place over a period of days, weeks, months or longer caused by continuous or repeated exposure to the same, related or continuous . . . general harmful conditions or substances:

    a.    Such **bodily injury** . . . shall be deemed to have taken place only on the date of first exposure to such . . . general harmful conditions or substances; or

    b.    Such **bodily injury** . . . shall be deemed to have taken place during the **policy period** of the first policy providing coverage substantially the same as that provided by COVERAGE PART I of this policy for **bodily injury** . . . that takes place during the **policy period** but only if:

        (1)    The date of first exposure cannot be determined or is before the effective date of the first policy issued by us to you providing coverage substantially the same as that provided by COVERAGE PART I of this policy for **bodily injury** . . . that takes place during the **policy period**; and

        (2)    Such **bodily injury** . . . continues, in fact, to take place during this **policy period**."

26. The Policies also state:

"If the same, related or continuous . . . general harmful conditions or substances results in **bodily injury** . . . that takes place during the **policy period**s of different policies issued by us to you providing coverage substantially the same as that provided by COVERAGE PART I of this policy for **bodily injury** . . . that takes place during the **policy period**:

    a.    All such **bodily injury** . . . shall be deemed to have taken place only during the first **policy period** of such policies in which any of the **bodily injury** . . . took place; and

    b.    All damages arising from such **bodily injury** . . . shall be deemed to have arisen from one **occurrence** and shall be subject to the Each Occurrence Limit applicable to the policy for such first **policy period**."

27. Each of the Policies contains a Choice of Law clause stating as follows:

> In the event that [MSI] and [Ironshore] have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, [MSI] agrees with [Ironshore] that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles. The terms and conditions of this policy shall not be deemed to constitute a contract of adhesion and shall not be construed in favor of or against any party hereto by reason or authorship or otherwise.

7

28. To the extent not waived or otherwise excused, MSI has complied with all terms and conditions precedent in the Policies. Therefore, MSI is entitled to all benefits of the insurance provided by the Policies.

## THE UNDERLYING LAWSUITS

29. Since February 2021, MSI has been named a defendant in 129 Underlying Lawsuits alleging bodily injuries purportedly resulting from exposure to silica, metals, dusts, and other harmful substances present in products distributed by MSI. Attached as Exhibit N and incorporated herein by reference is a chart identifying each of the Underlying Lawsuits.

30. Each of the plaintiffs in the Underlying Lawsuits allege that they and/or their loved ones were exposed to silica, metals, dusts, and other harmful substances while cutting, grinding, installing, or otherwise working with MSI products. The plaintiffs in the Underlying Lawsuits allege exposure to these substances, and resulting bodily injuries, over a range of years, with some underlying plaintiffs alleging exposures as early as the 1980s. Each of the plaintiffs in the Underlying Lawsuits alleges bodily injuries resulting from exposure to these substances during the policy period of one or more of the Policies.

31. As of the date of this Complaint, there are 129 Underlying Lawsuits pending.

32. In or about July 2024, MSI reached a confidential settlement with the plaintiff in the Underlying Lawsuit titled *Reyes-Gonzalez v. Aaroha Radiant Marble & Granite Slabs, et al.*, Case No. 22STCV31907, in Los Angeles Superior Court (the "*Reyes-Gonzalez* Lawsuit"). Following this settlement, MSI was dismissed as a defendant in the *Reyes-Gonzalez* Lawsuit.

33. Recently, MSI reached confidential settlements with the plaintiffs in the Underlying Lawsuits titled *Rodolfo Garcia-Rosas, et al. v. Architectural Surfaces, Inc.*, et al., Case No. 22STCV39957, in Los Angeles Superior Court (the "*Garcia-Rosas* Lawsuit") and *Wendy*

*Viridiana Solano-Claustro, et al. v. ADB Global Trade, LLC, et al.*, Case No., 23STCV11602, in Los Angeles Superior Court (the "*Solano-Claustro* Lawsuit").

34. With the exception of the *Reyes-Gonzalez* Lawsuit, the *Garcia-Rosas* Lawsuit, and the *Solano-Claustro* Lawsuit, MSI remains a defendant in each of the Underlying Lawsuits, although MSI has not yet been served with some of the more recently-filed complaints in certain of the Underlying Lawsuits.

35. To the extent MSI is named as a defendant in additional lawsuits containing similar allegations to those asserted in the Underlying Lawsuits, MSI reserves its right to supplement this Complaint to confirm Ironshore's coverage obligations with respect to such additional lawsuits.

## IRONSHORE'S BREACHES AND BAD FAITH CONDUCT

36. Each of the Underlying Lawsuits seeks damages for covered or potentially covered "bodily injuries" caused by an "occurrence" as those terms are used and defined in the Policies.

37. The Policies impose on Ironshore a duty to defend or pay MSI's defense costs for covered or potentially covered bodily injuries that occurred during the policy periods and that are caused by an occurrence. The Policies also impose on Ironshore the duty to indemnify MSI for settlements or judgments that MSI becomes legally obligated to pay as damages for bodily injuries covered by the Policies.

38. Because each of the Underlying Lawsuits is covered or potentially covered under one or more of the Policies, MSI timely sought coverage—including both a defense and indemnity—from Ironshore for each of the Underlying Lawsuits.

39. Ironshore initially agreed to defend MSI in each of the Underlying Lawsuits. Given that most of the Underlying Lawsuits allege exposure to MSI's products prior to January 1, 2013, Ironshore initially acknowledged coverage for most of the Underlying Lawsuits under the 2013-

14 Policy. However, with respect to the Underlying Lawsuits alleging exposure to MSI's products *after* the 2013-14 Policy's policy period, Ironshore acknowledged coverage under whichever Policy was in place as of the date of the first alleged exposure. For example, if an Underlying Lawsuit alleged a first exposure to MSI's products in 2015, Ironshore would acknowledge coverage under the 2015-16 Policy.

40. Through its initial handling of the Underlying Lawsuits, Ironshore made clear its view that each of the Underlying Lawsuits involves a distinct "occurrence." This is not surprising, since New York courts have "consistently concluded that [underlying] claims constitute multiple occurrences because the claimants in such cases . . . were invariably exposed to [allegedly harmful materials] in different ways, for different periods of time, at different times and locations." *American Home Assur. Co. v. Port Auth. of N.Y. & N.J.*, 2017 WL 5890776, at *16 (N.Y. Sup. Ct. Nov. 29, 2017), *aff'd* 89 N.Y.S.3d 81, 82 (1st Dep't 2018). As the Court of Appeals put it, where incidents "share few, if any, commonalities, differing in terms of when and where exposure occurred, whether the exposure was prolonged and for how long, and whether one or more …sites was involved… there were unquestionably multiple occurrences[.]" *Appalachian Ins. Co. v. Gen. Elec. Co.*, 8 N.Y. 3d 162, 174 (2007).

41. Recently, however, Ironshore backpedaled on its promises to MSI. Specifically, in a letter dated December 18, 2024, Ironshore purported to "clarify" its prior positions and asserted for the first time that all of the Underlying Lawsuits involve a single "occurrence." Ironshore further asserted that all of the "bodily injuries" alleged in the Underlying Lawsuits must be deemed to have taken place during the 2013-14 Policy's policy period. Ironshore further asserted that once it paid the $1,000,000 Each Occurrence Limit under the 2013-14 Policy, it would no longer be obligated to defend or indemnify MSI in any pending Underlying Lawsuits.

10

42. Ironshore's positions, as articulated in its December 18, 2024, letter and subsequent communications, constitute breaches of the applicable Policies. Each of the Underlying Lawsuits alleges exposure to different MSI products at different points in time, for different durations, for different plaintiffs, and with different resulting injuries. Accordingly, Ironshore's position that all of the Underlying Lawsuits involve a single "occurrence" subject to a single "Each Occurrence Limit" under a single Policy, and refusal to acknowledge coverage under the Policies, is incorrect and constitutes a breach of its contractual obligations.

43. Contrary to Ironshore's position, the Underlying Lawsuits consist of multiple "occurrences," with each underlying plaintiff's alleged bodily injuries constituting a separate "occurrence" as defined in the Policies. Therefore, Ironshore is responsible for indemnifying MSI for up to the full Each Occurrence Limit in each of the Underlying Lawsuits, subject only to the aggregate limits in each of the Policies. Furthermore, Ironshore's payment of a single Each Occurrence Limit would not extinguish Ironshore's duty to defend MSI in other covered or potentially covered pending Underlying Lawsuits.

44. On information and belief, Ironshore knows the positions taken in its December 18, 2024, letter are contrary to the facts, the law, and insurance industry custom and practice. Also on information and belief, Ironshore is taking these incorrect positions in bad faith in an effort to deprive MSI of millions of dollars of coverage to which it is entitled under the Policies.

45. By this lawsuit, MSI seeks to confirm the full scope of Ironshore's coverage obligations under the Policies and to recover damages suffered as a result of Ironshore's wrongful conduct.

46. MSI hereby demands a trial by jury in this action.

## COUNT I

### *Declaratory Relief*

47. MSI repeats and realleges all proceeding paragraphs as if fully stated herein.

48. An actual and justiciable controversy exists between MSI and Ironshore.

49. Specifically, MSI contends that Ironshore is obligated to defend and indemnify MSI in connection with each Underlying Lawsuit, subject only to the exhaustion of all applicable Policies.

50. MSI further contends that the Underlying Lawsuits involve multiple "occurrences" as that term is defined in the Policies.

51. MSI is informed that Ironshore disputes MSI's contentions as stated herein. Specifically, as noted above, Ironshore contends that all of the Underlying Lawsuits involve a single "occurrence" and that all bodily injuries alleged in the Underlying Lawsuits are deemed to have occurred during the 2013-14 Policy's policy period. Ironshore also contends that, upon payment of the $1,000,000 Each Occurrence Limit under the 2013-14 Policy, it will no longer be obligated to defend or indemnify MSI in any pending Underlying Lawsuits.

52. MSI disputes Ironshore's contentions as stated in the preceding paragraph.

53. Therefore, declaratory relief is necessary at this time so that the parties' dispute may be resolved and so the parties may be aware of their respective rights and duties.

## COUNT II

### *Breach of Contract*

54. MSI repeats and realleges all proceeding paragraphs as if fully stated herein.

55. Each Policy is a valid contract between MSI and Ironshore.

56. MSI complied with all obligations under the Policies, including paying all premiums and timely tendering notice of the Underlying Lawsuits.

57. On December 18, 2024, Ironshore sent MSI a letter asserting that all of the Underlying Lawsuits "involve a single Occurrence resulting in injury deemed to have taken place during a single policy," the 2013-14 Policy, and further asserting that it would withdraw from MSI's defense once Ironshore contributed $1,000,000 towards settlements in the Underlying Lawsuits.

58. Despite MSI's demands that Ironshore honor its full obligations under the Policies and the law, Ironshore remains entrenched in its wrongful position and has reiterated its wrongful positions in correspondence subsequent to its December 18, 2024, letter.

59. Ironshore's positions are incorrect and constitute a breach of Ironshore's contractual duties under the Policies.

60. Ironshore has failed and refused to honor its contractual duties, and it has breached its duty to indemnify MSI in connection with the settlements in the *Garcia-Rosas* Lawsuit and the *Solano-Claustro* Lawsuit—both of which MSI has a legal obligation to pay, and both of which are covered under the Policies. Ironshore has also indicated its refusal to honor its defense duty and indemnity obligations under the Policies going forward, wrongfully and in breach of its contractual duties.

61. As a direct and proximate result of Ironshore's contractual breaches, MSI has sustained, and will continue to sustain, damages in an amount in excess of this Court's jurisdictional limit to be proven at trial.

## COUNT III

### *Anticipatory Breach of Contract*

62. MSI repeats and realleges all proceeding paragraphs as if fully stated herein.

63. By acting as alleged above, and by stating that upon payment of a single $1,000,000 Each Occurrence Limit under the 2013-14 Policy, it would no longer be obligated to defend or indemnify MSI in any pending Underlying Lawsuits, Ironshore has clearly stated that it will not meet or perform its future obligations under the Policies it issued to MSI. Ironshore has confirmed its repudiation of its duties even though MSI has been and remains willing to perform any obligations that it might have under the Policies to the extent not waived or excused.

64. Therefore, to the extent any of its acts and failures do not constitute a breach of the Policies, they constitute an anticipatory breach of the Policies.

65. As a direct and proximate result of Ironshore's acts and failures to act, MSI has sustained, and will continue to sustain, damages in an amount in excess of this Court's jurisdictional limit to be proven at trial. MSI will seek leave to amend this Complaint once it ascertains the full extent of its damages.

## COUNT IV

### *Tortious Breach of the Implied Duty of Good Faith and Fair Dealing*

66. MSI repeats and realleges all proceeding paragraphs as if fully stated herein.

67. The Policies' Choice of Law clauses do not govern MSI's claim for tortious breach of the implied duty of good faith and fair dealing. California law, not New York law, governs MSI's claim for tortious breach of the implied duty of good faith and fair dealing.

68. Implied in the Policies is a covenant that Ironshore will act in good faith and deal fairly with MSI, that it would do nothing to interfere with MSI's right to receive the benefits due

under its Policies, and that it would give at least the same level of consideration to MSI's interests as it gives its own interests.

69. Ironshore also has a duty under its Policies, the law, and insurance industry custom, practice, and standards to promptly conduct a full and thorough investigation, including all bases that might support MSI's claims for coverage.

70. Ironshore has a duty under its Policies, the law, and insurance industry custom, practice, and standards to honor the terms of insurance promised under its Policies.

71. Instead of complying with these duties, Ironshore acted in bad faith by, among other things,

    a) asserting grounds for disputing coverage that it knows are not supported by, and are contrary to, the terms of its Policies, the law, insurance industry custom and practice, the parties' course of dealings, and the facts;

    b) failing to conduct an adequate investigation into MSI's claims for coverage, and asserting grounds for disputing coverage based on its inadequate investigation;

    c) unreasonably failing and refusing to honor its promises and representations;

    d) giving greater consideration to its own interests than MSI's interests; and

    e) otherwise acting as alleged above.

72. In breach of the implied covenant of good faith and fair dealing, MSI committed the acts alleged above for the purpose of knowingly withholding from MSI the rights and benefits to which it is and was entitled under the Policies.

73. The acts of Ironshore are inconsistent with MSI's reasonable expectations, are contrary to established industry custom and practice, are contrary to the express and implied terms of the Policies, and constitute bad faith.

74. As a direct and proximate result of Ironshore's breaches of the implied covenant of good faith and fair dealing, MSI has sustained, and continues to sustain, damages in an amount in excess of this Court's jurisdictional limit to be proven at trial.

75. Also, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), MSI is entitled to recover all attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits due under the Policies that Ironshore has wrongfully withheld, and is withholding, in bad faith. MSI is entitled to interest thereon at the maximum legal rate. MSI continues to suffer damages because of the bad faith conduct of Ironshore and will seek to amend this Complaint once it ascertains the full extent of its damages.

76. MSI is informed and believes, and on that basis alleges, that Ironshore—acting through one or more of its respective officers, directors, or other corporate employees with substantial independent and discretionary authority over significant aspects of Ironshore's business—performed, authorized, and/or ratified the bad faith conduct alleged above.

77. The conduct of Ironshore is contemptible and has been done with a conscious disregard of MSI's rights, constituting oppression, fraud, and/or malice. Ironshore has engaged in a series of acts designed to deny MSI of the benefits due under its Policies. Specifically, Ironshore, by acting as alleged above, consciously disregarded MSI's rights and forced MSI to incur substantial financial losses, thereby inflicting substantial financial damage on MSI. Ironshore ignored MSI's interests and concerns with the requisite intent to injure within the meaning of California Civil Code section 3294. Therefore, MSI is entitled to recover punitive damages from

Ironshore in an amount sufficient to punish and make an example of them and to deter similar conduct in the future.

**PRAYER FOR RELIEF**

WHEREFORE, MSI respectfully requests the following:

A. A declaration in accord with MSI's contentions stated above;

B. For damages according to proof at the time of trial, plus interest;

C. Punitive damages in an amount to be determined at trial;

D. Attorneys' fees and costs; and

E. Any other relief the Court deems appropriate.

Dated: New York, New York

February 28, 2025

Respectfully submitted,

MCGUIREWOODS LLP

By: */s/ Aaron F. Jaroff*
Aaron F. Jaroff
Lindsay Brandt Jakubowitz
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
Telephone: (212) 548-2100
Email: ajaroff@mcguirewoods.com
ljakubowitz@mcguirewoods.com

Shaun H. Crosner*
1800 Century Park East
8th Floor
Los Angeles, CA 90067-1501
Telephone: (310) 315-8200
Email: scrosner@mcguirewoods.com

*Pro Hac Vice* Application forthcoming
*Attorneys for Plaintiff*
*M S International, Inc.*